ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
JUL 28 2005
U.S. COURT OF FEDERAL CLAIMS

SHELL OIL COMPANY, UNION OIL COMPANY OF CALIFORNIA, ATLANTIC RICHFIELD COMPANY, and TEXACO INC.,

Plaintiffs,

v.

UNITED STATES OF AMERICA,

Defendant.

Case No. 05-704C
Senior Judge Loren A. Smith

## AMENDED COMPLAINT

1. Plaintiffs Shell Oil Company, Union Oil Company of California, Atlantic Richfield Company, and Texaco Inc. (collectively referred to as the "Oil Companies") bring this action for damages against the United States for breaches of contracts under the Tucker Act. The cause of action alleged in this Amended Complaint was transferred by the United States District Court for the Central District of California ("Central District of California") pursuant to 28 U.S.C. § 1631, and this Amended Complaint is therefore filed pursuant to Rule 3.1 of the Rules of the United States Court of Federal Claims.

2. The United States and State of California originally brought this action against the Oil Companies (and other defendants) in the Central District of California pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), as amended, 42 U.S.C. § 9601 *et seq.*, for recovery of costs ("CERCLA response costs") incurred in responding to the release of hazardous substances at the McColl Superfund site ("McColl Site") located in Fullerton, California. The McColl Site included hazardous

substances produced by the Oil Companies during World War II as a direct consequence of the production of high octane aviation fuel ("Avgas"). During World War II, the Oil Companies produced Avgas in extraordinary quantities at the demand of, and in fulfillment of procurement contracts with, the United States. The United States' original CERCLA Complaint, filed on February 1, 1991, is attached hereto as Attachment A.

3. The Oil Companies counterclaimed against the United States for the CERCLA response costs, for breaches of contracts, and for related causes of action. The Oil Companies Counterclaim, filed on April 22, 1991, is attached hereto as Attachment B. The United States' Answer to the Counterclaim, filed on August 15, 1991, is attached hereto as Attachment C.

4. On September 28, 1993, the Central District of California granted summary judgment to the United States on liability against the Oil Companies for the CERCLA response costs. The court bifurcated the issues relating to cost recovery from the Oil Companies' counterclaims, deferring the counterclaims. On December 12, 1994, the parties entered into a partial consent decree pursuant to which the Oil Companies paid $18,000,000 for CERCLA response costs incurred by the United States and the State of California through 1990, and the Oil Companies retained the right to recover these funds pursuant to its counterclaims. The partial consent decree also clarified that the September 28, 1993 Order constituted a declaratory judgment pursuant to CERCLA in favor of the United States and the State of California for ongoing CERCLA response costs. On September 18, 1995, the Central District of California granted the Oil Companies summary judgment on liability against the United States for the CERCLA response costs based on some of the Oil Companies' counterclaims, and after trial in 1998, allocated 100% of all CERCLA response costs to the United States, including the $18,000,000 previously paid by the Oil Companies. The United States Court of Appeals for the

Ninth Circuit reversed the Central District of California's judgment on liability for CERCLA response costs relating to the majority of the hazardous substances at the McColl Site. The Ninth Circuit, however, affirmed the Central District's allocation of 100% of the costs to the United States as to approximately 5.5% of the hazardous substances at the McColl Site, which related to the treatment of government-owned benzol. Thus, the Oil Companies were found liable for the CERCLA response costs for the non-benzol related hazardous substances. On remand, the Oil Companies pursued their remaining counterclaims.

5. The Central District of California addressed all remaining counterclaims, except that it transferred, pursuant to 28 U.S.C. § 1631, the cause of action alleged in this Amended Complaint concerning the Oil Companies' contractual rights against the United States.

**JURISDICTION**

6. This Court has jurisdiction over this matter pursuant to the Tucker Act, 28 U.S.C. § 1491.

**THE PARTIES**

7. Shell Oil Company ("Shell") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Houston, Texas.

8. Union Oil Company of California ("Union") is a corporation organized and existing under the laws of the State of California with its principal place of business in El Segundo, California.

9. Atlantic Richfield Company ("Atlantic Richfield") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Warrenville, Illinois.

10. Texaco Inc. ("Texaco") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in San Ramon, California.

11. The United States of America is the defendant.

## FACTUAL ALLEGATIONS

12. The Reconstruction Finance Corporation ("RFC") was established in 1932 and its authority was expanded in June 1940 to aid in national defense programs. The RFC established the Defense Supplies Corporation ("DSC") as a subsidiary corporation to procure strategic commodities (among other activities). Pursuant to this authority, during World War II, the United States, through the DSC, entered into one or more contracts with various predecessors-in-interest of the Oil Companies to refine and manufacture Avgas for purchase by the United States in furtherance of the war effort. Specifically, DSC and the Oil Companies' various predecessors-in-interest entered into the following contracts (collectively referred to as the "Avgas Contracts"):

a. On April 10, 1942, Shell and the United States, through the DSC, entered into a contract for the sale and purchase of large volumes of Avgas.

b. On May 1, 1943, Shell and the United States, through the DSC, entered into a contract for the sale and purchase of large volumes of Avgas.

c. On December 31, 1942, Union and the United States, through the DSC, entered into a contract for the sale and purchase of large volumes of Avgas.

d. On May 1, 1943, Union and the United States, through the DSC, entered into a contract for the sale and purchase of large volumes of Avgas.

e. On February 3, 1942, Richfield Oil Corporation, a predecessor-in-interest to Atlantic Richfield, and the United States, through the DSC, entered into a contract for the sale and purchase of large volumes of Avgas.

f. On February 20, 1943, Richfield Oil Corporation, a predecessor-in-interest to Atlantic Richfield, and the United States, through the DSC, entered into a contract for the sale and purchase of large volumes of Avgas.

g. On January 17, 1942, The Texas Company, a predecessor-in-interest to Texaco Inc., and the United States, through the DSC, entered into a contract for the sale and purchase of large volumes of Avgas.

h. On February 8, 1943, The Texas Company, a predecessor-in-interest to Texaco Inc., and the United States, through the DSC, entered into a contract for the sale and purchase of large volumes of Avgas.

i. On June 10, 1942, Tidewater Associated Oil Company, a predecessor-in-interest to Texaco Inc., and the United States, through the DSC, entered into a contract for the sale and purchase of large volumes of Avgas.

j. On February 18, 1943, Tidewater Associated Oil Company, a predecessor-in-interest to Texaco Inc., and the United States, through the DSC, entered into a contract for the sale and purchase of large volumes of Avgas.

With the exception of certain provisions not pertinent to this action, the Avgas Contracts are substantially identical in all relevant respects.

13. The United States is bound by the Avgas Contracts either in its own right or as the successor-in-interest to both the DSC and RFC.

14. The Avgas Contracts remained in effect throughout World War II and during all times relevant to this Amended Complaint.

15. The Avgas Contracts require the United States to pay and/or reimburse the Oil Companies for all unanticipated, extraordinary costs or expenses incurred by the Oil Companies as a result of the production of Avgas pursuant to the Avgas Contracts and/or in otherwise complying with the government mandate to maximize manufacture of Avgas at all costs.

16. For example, the Avgas Contracts expressly require the United States to pay:

> [A]dditional taxes, fees, or charges, other than income, excess profits, or corporate franchise taxes, which Seller may be required to pay by any municipal, state, or federal law in the United States or any foreign country to collect or pay by reason of the production, manufacture, sale or delivery of the [Avgas].

17. Also for example, the Avgas Contracts, either originally or as amended, expressly provide in relevant part with minor variations:

> [I]f by reasons of any cause or condition . . . resulting directly or indirectly from the existence of a state of war, the normal functioning of any refinery at which any portion of the [Avgas] supplied hereunder is manufactured shall be interfered with to such an extent that in the opinion of the Seller the cost of refining [that Avgas] is increased in respects other than those corrected by adjustment of the base price under the above paragraphs (a) and (b), Seller may give notice to Buyer that the delivery of [Avgas] will be reduced in an amount sufficient in the judgment of Seller to offset the added cost of refining unless Buyer shall agree with Seller to increase the price paid for [Avgas] by an amount sufficient to offset such increased cost.

18. In addition, the parties' intent was for the United States to pay and/or reimburse the Oil Companies for all unanticipated, extraordinary costs or expenses incurred by the Oil Companies as a result of the production of Avgas pursuant to the Avgas Contracts and/or in otherwise complying with the government mandate to maximize manufacture of Avgas at all costs.

**COUNT I**

19. Paragraphs 1-18 are re-alleged and incorporated.

20. The Oil Companies have incurred substantial expenses in connection with the presence of hazardous substances at the McColl Site, including litigation costs. All costs incurred by the Oil Companies relating to the McColl Site are unanticipated, extraordinary costs or expenses incurred by the Oil Companies as a result of the production of Avgas pursuant to the Avgas Contracts and/or in otherwise complying with the government mandate to maximize manufacture of Avgas at all costs. As such, the United States is required to pay and/or reimburse the Oil Companies for these costs under the Avgas Contracts.

21. In addition, pursuant to the partial consent decree, the Oil Companies paid the United States $13,248,000 and the State of California $4,752,000 towards their claims for recovery of CERCLA response costs. In the partial consent decree, the Oil Companies retained the right to recover these funds pursuant to its counterclaims. These costs are unanticipated, extraordinary costs or expenses incurred by the Oil Companies as a result of the production of Avgas pursuant to the Avgas Contracts and/or in otherwise complying with the government mandate to maximize manufacture of Avgas at all costs. As such, the United States is required to pay and/or reimburse the Oil Companies for these costs under the Avgas Contracts.

22. In addition, any CERCLA response costs incurred by the Oil Companies or which the Oil Companies are required to pay pursuant to any judgment entered in the Central District of California or otherwise are unanticipated, extraordinary costs or expenses incurred by the Oil Companies as a result of the production of Avgas pursuant to the Avgas Contracts and/or in otherwise complying with the government mandate to maximize manufacture of Avgas at all

costs. As such, the United States is required to pay and/or reimburse the Oil Companies for these costs under the Avgas Contracts.

23. The United States' refusal to pay and/or reimburse the Oil Companies for the costs described in Paragraphs 20-22 under the Avgas Contracts materially breaches those contracts. As a result of the United States' breaches of contract, the Oil Companies are entitled to recover the full amount of the costs described in Paragraphs 20-22, according to proof, by reason of the United States' failure to adhere to its obligation to pay and/or reimburse the Oil Companies for these costs pursuant to the Avgas Contracts, in light of the intent of the parties. Moreover, the United States' breach of the Avgas Contracts entitles the Oil Companies to damages or other monetary relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray that this Court:

a. Award the Oil Companies Damages in an amount to be determined at trial, together with prejudgment interest, as a result of United States' breaches of contract;

b. Award the Oil Companies its costs, interest, and attorneys' fees as allowed by law; and

c. Order such other relief as the Court may deem just and proper.

Dated: July 28, 2005

Respectfully Submitted,

Michael W. Kirk / by Nicholas A. Oldham

Michael W. Kirk
*Counsel of Record*
COOPER & KIRK, PLLC
1500 K Street, NW
Suite 200
Washington, DC 20005
(202) 220-9600

*Of Counsel*:
Vincent J. Colatriano
Nicholas A. Oldham
COOPER & KIRK, PLLC
1500 K Street, N.W.
Suite 200
Washington, D.C. 20005
(202) 220-9600